**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **REDEEMED CHRISTIAN CHURCH OF** | ) | |
| **GOD RESURRECTION POWER ASSEMBLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No.** |
| **v.** | ) | |
| | ) | |
| **TIFFANY HENYARD, individually, and in her** | ) | |
| **official capacity as Mayor of the Village of** | ) | |
| **Dolton, and VILLAGE OF DOLTON, an Illinois** | ) | |
| **municipal corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>VERIFIED COMPLAINT FOR DAMAGES, FOR DECLARATORY JUDGMENT OR IN THE ALTERNATIVE INJUNCTIVE RELIEF</u>**

NOW COMES the Plaintiff, REDEEMED CHRISTIAN CHURCH OF GOD RESURRECTION POWER ASSEMBLY, an Illinois not-for-profit corporation ("Resurrection Power Assembly," or the "Church"), by and through its attorneys, Mauck & Baker, LLC, and complains against the Defendant TIFFANY HENYARD ("Henyard", or "Mayor') and the Defendant VILLAGE OF DOLTON, an Illinois municipal corporation ("Village") as follows:

### I. <u>NATURE OF THE CASE</u>

1. This matter is about the deliberate illegal treatment of the Plaintiff Church, by the Defendants Village of Dolton and Mayor Tiffany Henyard.

2. Resurrection Power Assembly has purchased a building in the B-2 zoning to renovate and for use as a church.

3.   The Defendants' actions are directly contrary to its Ordinances as the express language of Title 10-6B-2 of the Village of Dolton Zoning Code permits religious institutions in the B-2 District zoning district, which is the zoning district where the Church's Property is located at 703 E. Sibley Blvd., Dolton, Illinois 60419 (the "Property").





4.   Village officials have declared that the Property is not zoned for use as a church and has withheld approval of other permits solely based on the false assertion that the Property is not zoned as a church.

5.   Defendants' actions in failing to apply its own Zoning Code facially, and as applied

to the Church, prevents Plaintiff and other religious assembly uses from operating anywhere within the Village's B-2 limited retail district. At the same time, similar nonreligious assembly uses such as hotels, municipal buildings, a library, and uses described as "fraternal/social clubs/education/charitable or philanthropic" are permitted in the zone *as of right*.

6. On its face and as applied, Defendants' actions in failing to apply its own Zoning Code treats religious assemblies on unequal terms with nonreligious assembly uses in violation of the "Equal Terms' provision of Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc(b)(1) ("RLUIPA"); See also *River of Life Kingdom Ministries v. Vill. of Hazel Crest, Ill*., 611 F. 3d 367, 374 (7th Cir. 2010 ("But should a municipality create what purports to be a pure commercial district and then allow other uses, a church would have an easy victory if the municipality kept it out.")

7. Defendants have also imposed their land use regulations in a manner that treats similarly situated uses differently in violation of the Equal Protection Clause of the United States Constitution. *Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985).

8. Defendants' actions in not applying and honoring their own Zoning Code also places unreasonable limitations on religious assemblies which seek to worship in the Village in violation of the Unreasonable Limitations provision of RLUIPA, 42 U.S.C. 2000cc(b)(3)(B).

9. The Defendants' actions have further imposed a substantial burden on the Church in violation of RLUIPA, 42 U.S.C. 2000cc(a)(1) and continue to unlawfully restrict the Church's free exercise of religion and freedom of speech and freedom of association as protected by the First Amendment to the United States Constitution.

## II.   PARTIES

10. Plaintiff, Redeemed Christian Church of God Resurrection Power Assembly, is an

Illinois not-for-profit corporation and it was founded in November 8, 2008, as a church plant to Redeemed Christian Church of God (RCCG), that has at least 30 locations where members meet to worship throughout Illinois.

11. Pastor Stephen Osunkeye is senior pastor at Redeemed Christian Church of God Resurrection Power Assembly.  His Declaration is attached hereto as Exhibit 1.

12. Defendant, the Village of Dolton, is a home rule unit of local government with a principal place of business at 14122 Martin Luther King Jr. Drive, Dolton, IL  60419 (hereinafter "the Village")

13. Defendant, Tiffany Henyard, is the Mayor of the Village of Dolton (hereinafter "Mayor" or "Henyard".)

14. Defendants through its boards and trustees are responsible for the enactment and enforcement of the Zoning Code and the actions challenged herein.

### III.    JURISDICTION AND VENUE

15. Defendants actions are contrary to their own Zoning Code and creates a substantial burden on the free exercise of religion of Resurrection Power Assembly.

16. This action arises under, inter alia, the First and Fourteenth Amendment to the Constitution of the United States and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. §2000cc1, et seq.

17. This Court has jurisdiction over the subject matter of this action by virtue of U.S.C. §1331 (federal question jurisdiction); 28 U.S.C. §2201 (authorizing declaratory relief); and 28 U.S.C. §2202 (authorizing injunctive relief).

18. Venue is proper in this District pursuant to 28 U.S.C. §1391(e) and 1402(a) and 5 U.S.C. U.S.C. §703, and because Defendants' principal offices are located within Cook County and the transactions out of which this action arose occurred in Cook County.

19. This Court has supplemental jurisdiction to enforce the Village of Dolton Zoning Code because both the Ordinance non-enforcement by Defendants and federal wrongs alleged are all based on the same facts.

## IV.  BACKGROUND

### A.  Background of the Church

20.  The Church began its ministry in November 8, 2008, by meeting to worship in the South Holland Community Center.  Thereafter, the Church moved its location to Quan Gym, in Calumet City.  Subsequently, the Church moved to 233 E. 138th Street, Dolton, Illinois, where they have been for 10 years. (Ex. 1, Declaration of Pastor Osunkeye)

21.  Due to an increase in church attendance, Resurrection Power Assembly proceeded with a new church plant in Chicago.  Despite diverting some members to start a new church in 2022, the Church continued to experience growth in attendance at their church services and as a result faced numerous obstacles related to lack of space for its ministries. (Ex. 1, Declaration of Pastor Osunkeye)

22.  By May 21, 2023, there were a total of 82 members attending the Church, including 18 men, 25 women, and 39 children.  (Ex. 1, Declaration of Pastor Osunkeye)

23.  Since its founding on November 8, 2008, the Church has conducted, and still intends to conduct, the following ministries and religious exercises, all of which are compelled by and integral to the sincerely held religious beliefs of the Church and its members:

> a.  weekly assembly of the congregation to worship (Hebrews 10:25);
>
> b.  weekly preaching, including speech relating to personal morality, God, social, cultural and political issues (2 Timothy 4:2);
>
> c.  pastoral counseling for the disturbed, lonely and bereaved (Acts 20:28);
>
> d.  prayer meetings (Acts 1: 13-14);

    e.    singing and musical performances (Psalms 81:1-2);

    f.    baptisms, weddings, and communion (Matthew 28:19; Luke 22:19);

    g.    Bible studies (Psalm 110, 2 Tim. 3:16);

    h.    evangelism-sharing the Christian message and encouraging others to believe in Jesus the Messiah, particularly those who visit the church meetings (Matt. 28: 16-20);

    i.    financial giving to support the Church and its ministries to the poor and to the members in need (Mal. 3: 8-100; and

    j.    church planting.

(Ex. 1, Declaration of Pastor Osunkeye)

24. The Church believes that all of its ministries are in furtherance of its mission and religious exercise.



25. In February 2023, the Church felt called by God to relocate to a new facility located at 703 E. Sibley Blvd., Dolton, Illinois 60419 so that there would be more room for the church's ministries and for parking.  (Ex. 1, Declaration of Pastor Osunkeye)

**B.**    **Defendants' Opposition to the Church's Purchase of the Property**

26. Prior to the Church's purchase of the Property, Pastor Osunkeye received a copy of Chapter 6 of the Village of Dolton's Zoning Code from the Church's realtor, Sam Aiwuyo with Samesosa Realty, Inc., who had received the copy of Chapter 6 from the Village of Dolton's building department.  At that time, the pastor noticed that express language of the Zoning Code allowed for church in Zone B-2 where the Property was located.  (Ex. 1, Declaration of Pastor Osunkeye; Ex. 2, Chapter 6 of Zoning Code)

27. In June, 2023, the escrow was paid for repairs pursuant to the Village's inspection, and the Church closed on the Property.  (Ex. 1, Declaration of Pastor Osunkeye)  After the closing, the Church was given by the Village a  General Permit to commence the renovation and were told by the Village's building department that the plumbing permit and the electrical permit needed to be applied for separately.  (Ex. 1, Declaration of Pastor Osunkeye; Ex. 3, General Building Permit)

28. During the process of renovation, one of the Village's building inspectors told the Church that it needed to apply for a business license.  (Ex. 1, Declaration of Pastor Osunkeye)  Thereafter, Plaintiff was informed by the Defendants that the plumbing permit could not be approved until the business license was approved.  (Ex. 1, Declaration of Pastor Osunkeye)

29. On July 30, 2023, Pastor Osunkeye went to Village Hall to fill out the application for a business license for the Church.  When the pastor gave the completed application for the Church's business license to William Moore (the Village's Housing Director) he said to the pastor words to the effect that he did not believe the Church's application for a business license would be approved because it was the Mayor of Dolton's intention to keep Sibley Boulevard **only for commercial purposes**.  (Ex. 1, Declaration of Pastor Osunkeye, emphasis added)

30. Beginning in August, 2023, Resurrection Power Assembly retained an attorney from

Mauck & Baker, Richard C. Baker and thereafter informed him that there was an upcoming meeting scheduled with the Village to discuss the Church's application for a business permit. (Ex. 1, Declaration of Pastor Osunkeye).

31. In preparation for the meeting, Mr. Baker reviewed a copy of Chapter 6 of the Dolton's Zoning Code, entitled "Business Districts, Article B, B-2 Limited Retail Business District", that was given to him by Pastor Osunkeye that had been provided by the Village. (Ex. 1, Declaration of Pastor Osunkeye; Ex. 4, Declaration of Richard C. Baker)

32. Mr. Baker also went online to the Village's Zoning Map and reviewed it as well, prior to the meeting. (Ex. 4, Declaration of Richard C. Baker, Ex. 5, Zoning Map)

33. However, Pastor Osunkeye informed Mr. Baker before the meeting that he could not provide him with a copy of the entire Dolton Zoning Code because the Church had never received one from the Village. (Ex. 5, Declaration of Richard C. Baker)

34. Prior to the August meeting, Mr. Baker also went online to the Village's website and located the Property of the Church on the Village's Zoning Map and confirmed that the Church was located in a B-2 Limited Retail Business District. (Ex. 4, Declaration of Richard C. Baker)

35. In further preparation before the meeting with the Village, Mr. Baker reviewed Chapter 6 of the Village's Zoning Code concerning B-2 Limited Retail Business Districts that Pastor Osunkeye had provided and verified that Section 10-6B-2D of the Village's Zoning Code includes "Clubs and lodges (nonprofit), fraternal or *religious institutions*….", (emphasis supplied) as permitted uses in the B-2 Limited Retail Business District. (Ex. 4, Declaration of Richard C. Baker)

36. Thereafter, there was a meeting on August 30, 2023 between Resurrection Power Assembly (represented by Pastor Osunkeye and Assistant Pastor John Bashorun), the church's attorney (Richard C. Baker), the Village's Administrator (Keith Freeman), and the Village's

8

Housing Director (William Moore) to discuss the Church's application for a business license. (Ex. 1, Declaration of Pastor Osunkeye; Ex. 4, Declaration of Richard C. Baker)

37. At that meeting, the Village Administrator Mr. Freeman apologized but told Pastor Osunkeye that the Village would not be able to approve the Church's application for a business license.  (Ex. 1, Declaration of Pastor Osunkeye)

38. Specifically, Mr. Freeman said at the August 30th meeting, "You can have anything in there [203 E. Sibley Blvd] **except a church**." (emphasis supplied, Ex. 1, Declaration of Pastor Osunkeye)

39. Pastor Osunkeye responded to Village Administrator Keith Freeman at the meeting and informed him that he had told the Village of Dolton Housing Director, Mr. Moore, on July 30, 2023, that before the Church purchased the Property it was given Chapter 6 of the Village of Dolton's Zoning Code that lists "religious institutions" as a permissible use in Zone B-2, where the Property is located.  (Ex. 1, Declaration of Pastor Osunkeye)

40. During the August 30, 2023 meeting, Mr. Freeman then turned to Mr. Moore at the meeting and asked if what Pastor Osunkeye had said was true, and Mr. Moore said "yes." (Ex. 1, Declaration of Pastor Osunkeye)

41. At that same meeting, Mr. Freeman also told Mr. Baker that the Church must "stop work on the renovations at the Property because it was not zoned for church use."  (Ex. 4, Declaration of Richard C. Baker)

42. In response, Mr. Baker produced a copy of Chapter 6 of the Village's Zoning Code and showed Freeman Chapter 6, Article B, Section 10-6B-2D in which religious institutions are included as a permitted use in B-2 Limited Retail Districts. (Ex. 4, Declaration of Richard C. Baker)

43. Furthermore, Mr. Baker informed Mr. Freeman at the August 30, 2023 meeting that

the Village had affirmed that the Code permitted the Church's use of the Property as a religious institution when it issued the original Building Permit PM23-1806 which clearly states that the zoning has been "reviewed and is in compliance with all Village ordinances and restrictions." (Ex. 4, Declaration of Richard C. Baker)

44. In response, Mr. Freeman replied to Mr. Baker at the August 30, 2023 meeting that even though a General Building Permit had been issued, he had spoken to the Mayor and the renovations could not go forward because the Property was in an area intended for businesses, and churches were not a permitted use in that area along Sibley Blvd., where the Church's Property was located. (Ex. 4, Declaration of Richard C. Baker)

45. However, when Mr. Baker, in order to ascertain whether any other portion of the Zoning Code restricted uses on Sibley Blvd., asked Mr. Freeman for a copy of the full Zoning Code at the August 30, 2023 meeting, Mr. Freeman replied that he did not have a copy of the Code on hand, that it was difficult to get ahold of, but that he would track one down and forward it to Mr. Baker, and then schedule another meeting to settle the matter. (Ex. 4, Declaration of Richard C. Baker)

46. Additionally, when Pastor Osunkeye specifically asked Mr. Moore at the meeting on August 30, 2023 about the renewal of the Church's building permit, given that it was to expire in October, 2023, he responded by stating that there was no problem, when the time came to renew, the Village's Building Department would renew the Church's building permit. (Ex. 1, Declaration of Pastor Osunkeye)

47. In the interim, the Church's plumber submitted his application for the plumbing permit to the Village of Dolton for the Church. On or about early October, 2023, when the plumbing permit had still not been approved, Pastor Osunkeye went to speak to the Village to

speak with Mr. Moore, and asked him about the pending application for the plumbing permit. (Ex. 1, Declaration of Pastor Osunkeye)

48. Mr. Moore's response to Pastor Osunkeye's inquiry about the pending plumbing permit application at that meeting was "We're just waiting for the Village Administrator to approve it." (Ex. 1, Declaration of Pastor Osunkeye)

49. Because the Village was refusing to issue the plumbing permit and the project was stymied until this matter was resolved, Mr. Baker followed up with Mr. Freeman on September 5, 2023 by phone, and when he could not get through, he sent Mr. Freeman an email reminding him of his commitment at the August 30th meeting to provide Mr. Baker with a full copy of the Zoning Code so that they could potentially resolve the matter. (Ex. 4, Declaration of Richard C. Baker)

50. Although Mr. Baker made numerous requests by phone and via email to both Mr. Freeman and Mr. Moore to produce the full Zoning Code, and to show the provisions of the Zoning Code that would substantiate the Village's position that the Church was not a permitted use in its B-2 Limited Retail Business District. The Code was never produced and no Code provision ever provided to support the Village's position. Mr. Baker finally asked Mr. Moore and Mr. Freeman to provide him with the name of counsel representing the Village. (Ex. 4, Declaration of Richard C. Baker)

51. On November 1, 2023, after months of the Church's attorney Richard Baker leaving voice mail and sending emails to Mr. Freeman and Mr. Moore, Mr. Baker finally received a copy of the Village of Dolton's entire Zoning Code from the Village's attorney Mr. Stach. (Ex. 4, Declaration of Richard C. Baker; Ex. 6, *See* complete Village of Dolton Zoning Code)

52. The Zoning Code that was provided affirmed that the Church's property located at

703 E. Sibley Blvd., Dolton, IL is zoned in B-2 which allows church uses. (Ex. 1, Declaration of Pastor Osunkeye)

53. On November 2, 2023, Mr. Baker sent the Zoning Code to both Mr. Feeman and to Mr. Moore, along with a detailed letter setting forth the provisions in the Village's Zoning Code that allowed churches as a permitted use in the B-2 Limited Retail Business District, and specifically stated:

> "At our meeting in August, one of your last comments was that you would not want to stand in the way of the Lord's work. So please, "let my people go." Given the months of delay and given that RCCG Resurrection Power Assembly has a right to use its property as a church, the Village's continuing arbitrary refusal to issue the necessary building permits has placed a substantial burden on my client and is unlawful. Accordingly, we respectfully request that the Village lift the hold on the continued renovation of the property, renew its general building permit PM23-1086 and also issue the electrical and the plumbing permits necessary for the renovation. Please confirm this in writing so as to avoid any further confusion."
> (Ex. 4, Declaration of Richard C. Baker)

54. On November 27, 2023, in one last attempt to resolve this matter, Mr. Baker contacted the Village's Clerk's office and spoke with Ms. Neely by phone and then by email in an attempt to obtain the name of the Village's Attorney who could act on behalf of the Village to resolve this matter since Mr. Freeman refused to return calls or respond to emails and Mr. Stach said he did not represent the Village in this matter. ( Ex. 4, Declaration of Richard C. Baker)

55. When Mr. Baker spoke with Ms. Neely, she expressed surprise that the matter was still going on, stating that she thought it was resolved 'because the Mayor decided that this church use does not fit the plans for Sibley.'" (Ex. 4, Declaration of Richard C. Baker)

56. In addition, the Village of Dolton and Mayor Tiffany Henyard have failed to respond to a letter that Pastor Osunkeye sent to them on January 5, 2024, requesting a response and specific reasons why the Defendants continued to prohibit the Church's renovation on the

Property, when in fact the Village of Dolton's own Zoning Code allows churches as a permitted use under B-2 Limited Retail Business District. (Ex. 1, Declaration of Pastor Osunkeye)

57. Now, almost seven months later, after Resurrection Power Assembly closed on the Property and was provided an initial General Building Permit by the Village of Dolton's Building Department, the Defendants continue to refuse to respond to both Resurrection Power Assembly and its attorneys' requests to remove the hold on the building permits for the Property and to process its application for an electrical permit and for a plumbing permit for the church to continue its renovation. (Ex. 1, Declaration of Pastor Osunkeye)

**C.     Burdens on the Church**

58. Defendants' actions in opposition to the Village's own Zoning Code and opposing the use of the Property as a church have placed substantial burdens on the Church.

59. The church spent 10 years at its other location at 233 E. 138th Street, Dolton and was actively looking for another location for the location of the Church due to the increase in congregants of the Church. (Ex. 1, Declaration of Pastor  Osunkeye)

60. Even though the Church officially has purchased the Property located at 703 E. Sibley Blvd., Dolton, it needs to remodel the Property before the new Church location can officially re-open. (Ex. 1, Declaration of Pastor Osunkeye)

61. However, Defendants have willfully, and without any justification, continued to insist that the Church cannot proceed with renovation of the Property until it receives a business license (along with issuance of the plumbing and electrical permits) which the Defendants have still failed to provide to Plaintiff, almost a year after its request.  (Ex. 1, Declaration of Pastor Osunkeye)

62. During the remodeling process, the Church has had to rent a building temporarily in

Order to meet for worship services and for its ministries, and has been paying $1,000 per month for the rent for that space at 233 E. 138th Street, Dolton.  (Ex. 1, Declaration of Pastor Osunkeye)

63. The Church has been severely prejudiced by the Defendants' continued refusal to follow its own Zoning Code that permits "religious institutions" in Zone B-2. (Ex. 1, Declaration of Pastor Osunkeye; Ex.3, 10-13-7 of the Village of Dolton Zoning Code.)

64. Specifically, the hardships that the Church has endured to date include the following:

    a. The Church has had to pay $1,000 per month in rent for the location where the Church currently meets at 233 E. 138th Street, Dolton.

    b. There has been flooding in the hall of the location where the Church currently meets for church service.



    c. The drastic setback in the Church's children and teenager ministries because the Church does not have the space to accommodate separate rooms for the different age groups at the Church's current location.

    d. The ministries for teenagers and adults have to meet together in the same hallway since there is no place in the current location for separate meeting rooms.

e. The total church attendance has dropped by more than ½ from a total of 82 Church Attendees on May 21, 2023 to a total of 32 Church Attendees on March 3, 2024 due to a loss of morale.

f. Choir practice continues to be by Zoom since there is no location for the church choir to meet for the music ministries of the Church at the current location.

g. There have been declines in church tithing and members' contributions to the Church's building fund, given the loss in church membership and not being able to move into the Church's new property at Sibley Ave. that has more space for all of the ministries.

h. There has been a setback in Church Administration. For instance, the Church's pastor does not have a separate office to keep the church records and for private meetings with individual members of the Church for pastoral counseling. However, the Church's pastor does not have that at the current location for the Church meets and has to meet with members in the hallway of the current location.

i. The Church has incurred legal fees connected with its attempt to obtain the required permits and with this litigation.

(Ex. 1, Declaration of Pastor Osunkeye; Ex. 4, Declaration of Richard C. Baker)

65. The lack of a permanent home has also created uncertainty among the congregants.

66. The lack of a permanent home has also generated a lack of momentum among the Church's congregants. For instance, the Church's administration has had to field questions from its members regarding when certain ministries (such as the youth ministry) can have its own space and not have to share the space with the adults in the hallway of the temporary church location that the Church is currently using. (Ex. 1, Declaration of Pastor Osunkeye)

67. Moreover, the Church continues to face the weekly inconvenience of not being able to use their own Property in the Village of Dolton.

## COUNT I-VIOLATION OF B-2 ZONING CODE
### (The Church Against the Village and Mayor Henyard for damages)

68. The allegations contained in all of the preceding paragraphs are incorporated here by

reference.

69. Count I is alleged against the Village of Dolton and Mayor Henyard.

70. The Property is located in Zone B-2, Limited Retail Business District in the Village.

71. The Village's Zoning Code, Section 10-6B-2D states as follows:

"USES PERMITTED:  No building or land shall be used and no building shall be erected, unless otherwise provided in this Title except for the following uses:

Miscellaneous uses, as follows:
Clubs and lodges (nonprofit), fraternal or **religious institutions**
Meeting halls
Radio and television broadcasting stations
Signs, as classified and regulated in Chapter 10 of this Title." (emphasis added) (Ex. 7)

72. After the Village confirmed that the Property was zoned for church use and after the Village initially issued a General Building Permit to the Church for rehabbing the Property for church use, the Village then refused to allow renovation to continue.  (Ex. 1, Declaration of Pastor Osunkeye)

73. Although the Village claimed that they did not have a copy of its own Zoning Code, the Village also informed the Church that the Property was not zoned for church use, and the Mayor did not want a church at that location. (Ex. 1, Declaration of Pastor Osunkeye)

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

## COUNT II-DECLARATORY JUDGMENT
## PURSUANT TO 28 U.S.C. §2201
## (The Church Against the Village and Mayor Henyard)

74. The allegations contained in all of the preceding paragraphs are incorporated here by reference.

75. Count II is alleged against the Village of Dolton and Mayor Henyard.

76. The Village and the Mayor withheld granting the Church's business license, renewing

its General Building Permit, and issuing its electrical and plumbing permits because of the subjective view of Henyard who (despite the Zoning Code's express language to the contrary) only wanted commercial uses along Sibley Boulevard.

77. Based on prior assurances by the Village that the Church's General Building Permit would be renewed, the Church has had to completely stop the renovation of the Property and needs emergency relief from this Court to enforce the Village of Dolton's existing Zoning Code that permits "religious institutions" to be in Zone B-2.

78. Defendants are acting as if the Church is liable for violating the Village's Zoning Code when, in fact, the Village's Zoning Code expressly allows for "religious institutions" to be in Zone B-2. (Ex. 7, 10-13-7 of the Village of Dolton Zoning Code)

79. The Defendants' actions have caused severe prejudice to the Church because after the time period for the renewal the Church's building permit lapsed in late October, 2023, the Church has suffered severe hardships, as previously described in Paragraphs 65 through 67.

80. The hardships as described in Paragraphs 65 through 67 of this Complaint have been willfully caused by the Defendants, and the Church is in dire need of this Court's intervention and emergency relief that this Court can grant.

81. As such, Resurrection Power Assembly seeks a declaratory judgment to resolve this issue by declaring that the Village of Dolton and the Mayor must renew its General Building Permit, grant its business license, and issue the requested plumbing and electrical permits without a valid reason.

82. Resurrection Power Assembly has an interest in adjudicating such issues raised to protect its property interests in renewing a General Building Permit, holding a valid business license, and approving the plumbing and electrical permits so that the Church can continue with its renovation, the Church's operations, and relationship with the Church's members.

83. An actual case or controversy exists between Resurrection Power Assembly, the Village, and the Mayor, as well as an immediate and justiciable dispute on the issues presented.

84. A Declaration from this Honorable Court is requested stating the Village's and the Mayor's conduct in refusing to renew its General Building Permit, grant its business license, and issue the requested plumbing and electrical permits.

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### COUNT III-VIOLATION OF DUE PROCESS RIGHTS
### UNDER 42 U.S.C. §1983 and 28 U.S.C. §2202
### (The Church Against the Village and Mayor Henyard for damages)

85. The allegations contained in all of the preceding paragraphs are incorporated here by reference.

86. Count III is alleged against the Village of Dolton and Mayor Henyard.

87. The deprivation of a party's due process rights are actionable under 42 U.S.C. §1983, and states as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State….subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"
> 42 U.S.C. §1983.

88. The Fourteenth Amendment of the U.S. Constitution states "No State shall…. deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, §1.

89. The Seventh Circuit has recognized that a license to do business constitutes a property interest that is entitled to due process protection. See *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F. 3d 865, 870 (7th Cir. 2009)

90. The Village of Dolton and the Mayor have deprived Resurrection Power Assembly of its procedural due process rights by denying its access to a meaningful administrative hearing process prior to their denial of the Church's application for a Business License, their refusal to renew the Church's Building Permit, and their refusal to issue the requested plumbing and electrical permits for the Church's renovation.

91. The Village and the Mayor's misconduct is objectively unreasonable and has demonstrated malice and intentional disregard of the Church's due process rights.

92. The Village and the Mayor's actions are the direct and proximate cause of Resurrection Power Assembly's constitutional rights being violated.

93. Due to the fact that the Village and the Mayor have deprived the Church of its due process rights, Resurrection Power Assembly is entitled to an award of attorneys' fees and costs for bringing this action. *See* 42 U.S.C. §1983.

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### COUNT IV-42 U.S.C. §1983-CONSPIRACY TO DEPRIVE PLAINTIFF OF CONSTITUTIONAL RIGHTS (The Church Against the Village and Mayor Henyard for damages

94. The allegations contained in all of the preceding paragraphs are incorporated here by reference.

95. Count IV is alleged against the Village of Dolton and Mayor Henyard.

96. Defendant the Village of Dolton and Defendant Mayor Henyard, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

97. In furtherance of this conspiracy, each of the Defendants committed specific overt

acts, misusing their positions of authority for the purpose of violating the Church's constitutional rights. They accomplished this goal by unlawfully denying the Church its absolute right under the Village's Zoning Code where the Property was located in Zone B-2 to continue its renovation and ultimately worship as a church at the Property by refusing to renew the Church's building permit, denying the business license, and failing to respond to the multiple requests for status on the issuance of the plumbing and electrical permits for the Property.

98. Each individual Defendant is therefore liable for the violation of the church's rights by any other individual Defendant.

99. As a direct and proximate result of this conspiracy, Resurrection Power Assembly suffered damages, including suffering, mental distress, anguish, humiliation, and loss of personal freedom.

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

## COUNT V-42 U.S.C. §1983-*MONELL* LIABILITY
### (The Church Against the Village and Mayor Henyard for damages)

100. The allegations contained in all of the preceding paragraphs are incorporated here by reference.

101. Count V is alleged against the Village of Dolton and Mayor Tiffany Henyard.

102. The Village of Dolton through its Police Department and Mayor, has interrelated de facto policies, practices, and customs which included, inter alia:

      a. Falsely representing to the Church that the Village's Zoning Code is limited to commercial uses, when the express language of B-2 of the Zoning Code includes an exception for "religious institutions." (Ex. 7, Full Zoning Code)

      b. Failing to promulgate policies to address how public officials are to

engage with churches (such as Resurrection Power Assembly) in ensuring

constitutionally protected First Amendment activity;

c.  Failing to train public officials, such as the Defendants, in the express

language of the Village's Zoning Code, so that they have an understanding

of the fact that "religious institutions," such as the Church, are allowed

to exist in Zone B-2;

d.  Retaliating against the Church by denying its business license, by refusing to

renew its building permit, and by failing to issue the plumbing and electrical

permits (without any basis under the existing Zoning Code) resulting in

severe prejudice for the Church from the unjustified delays.

103.  Defendant the Village acted under the color of the law, and under the authority of

one or more interrelated de facto policies, practices and/or customs of the Village of Dolton, by

and through Mayor Henyard, to violate Resurrection Power Assembly's rights as set forth above.

104.  Defendant Mayor Henyard, in her role as the Mayor of the Village of Dolton, was

the final policymaker for the Village's response to the Church.

105.  Defendant Mayor Henyard developed and maintained policies, practices,

procedures and customs of the Defendant the Village by acting arbitrarily and inconsistently

from the Village of Dolton's Zoning Code, exhibiting deliberate antagonism to the constitutional

rights of the Church, including but not limited to those policies, practices, procedures, and

customs described above, which caused the violation of Resurrection Power Assembly's rights

as described herein and the resultant damages suffered.

106.  Although Defendant Mayor Henyard had the power to prevent or aid the

Defendant Village in the prevention of the wrongs done and conspired to be done as described

herein, she failed or refused to do so, resulting in the violation of 42 U.S.C. §1983.

107.     Upon information and belief, Defendant Mayor Tiffany Henyard was deliberately indifferent to the need for further training, supervision, or discipline related to failing to follow through and abide by the express terms of Section B-2 of the Village's Zoning Code relating to the efforts by the Church to seek the appropriate building permit, business license, and electrical and plumbing permits to permit with the renovation of the Property it previously purchased.

108.     The policies, practices, procedures, and customs of the Defendants the Village and Mayor Tiffany Henyard were the direct and proximate cause of the violations of Resurrection Power Assembly's constitutional rights and the damages that it suffered.

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

<u>**COUNT VI-VIOLATION OF RLUIPA**</u>
<u>**42 U.S.C. 2000cc(a)(1)**</u>
<u>**SUBSTANTIAL BURDEN PROVISION**</u>
<u>**(The Church Against the Village and Mayor Henyard for Damages)**</u>

109.     The allegations contained in all of the preceding paragraphs are incorporated here by reference.

110.     Count VI is alleged against the Village of Dolton and Mayor Henyard.

111.     The Substantial Burden Provision of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. 2000cc(a)(1) provides the following:

"Substantial burdens (1) General rule No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution-- (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. 2000cc(a)(1)

112.     The Seventh Circuit has held that, in the context of RLUIPA, "a land use regulation imposes a 'substantial burden' on religious exercise if it 'necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise -- including the use of

real property for the purpose thereof within the regulated jurisdiction generally -- effectively impracticable.'" *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 997 (7th Cir. 2006), quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762-63 (7th Cir. 2003).

113.    The Village's actions in refusing to follow its own Zoning Code (that allows religious institutions on the Property) facially and as applied in denying Resurrection Power Assembly's request for a business license and approval of the electrical and plumbing permits for the Property, bears direct responsibility for rendering Resurrection Power Assembly's religious exercise at the Church Property impracticable.

114.    The Village's actions in follow its own Zoning Code (that allows religious institutions on the Property) and, instead, putting on hold the renewal of the Church's building permit (and not allowing the Church to have a business license and not issuing the plumbing and electrical permits) while, at the same time, freely allowing other nonreligious assembly uses such as hotels, municipal buildings, and a library in Zone B-2, without placing any hold on their building permits is a substantial burden on the religious exercise of the Church.

115.    The Village's refusal to follow its own Zoning Code that allows religious institutions on the Property, and requiring religious assembly uses, like Resurrection Power Assembly, to go through the discretionary and arbitrary application process for issuance of a business license selectively imposes a burden on Resurrection Power Assembly that is not imposed on other non-religious assembly uses.

116.    By forcing Resurrection Power Assembly to go through the arbitrary process of seeking to obtain a business license and then having to wait an unspecified amount of time to learn whether the business license and requested electrical and plumbing permits would be approved or denied, the Village precluded Resurrection Power Assembly  and its members from

23

preaching, worshipping, ministering to others, and sharing their faith with others at the subject

property, and thereby substantially burdens their sincerely held religious beliefs.

117.    The Village's actions in refusing to follow its own Zoning Code (that

allows religious institutions on the Property) have also caused Resurrection Power Assembly

delay in securing worship space, the additional rental expenses at the alternate location while, at

the same time, dealing with flooding issues at its temporary alternate location, and have caused

uncertainty as to whether or not Resurrection Power Assembly at the end of the lease period will

actually be able to occupy the Church Property it has already purchased.

118.    Such delay, uncertainty and expense was found to be a substantial burden in the

RLUIPA context by the Seventh Circuit.

> "The burden here was substantial. The Church could have searched around for other
> parcels of land (though a lot more effort would have been involved in such a search
> than, as the City would have it, calling up some real estate agents), or it could have
> continued filing applications with the City, but in either case there would have been
> delay, uncertainty, and expense.  That the burden would not be insuperable would not
> make it insubstantial. "  *Sts. Constantine & Helen Greek Orthodox Church, Inc. v.
> City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005).

119.    The Village lacks a rational or compelling reason that would justify their denial of

Resurrection Power Assembly's business license, and electrical and plumbing permits, to use the

subject property as a church. Traffic, parking and/or commercial concerns do not serve as

compelling interests.

> "The primary concerns raised in the City Planning Commission's denial of the
> Temple's applications were increased traffic, increased on-street parking, and loss of
> revenue. These three concerns simply do not justify facially unequal treatment
> between a church and a private club. *Vietnamese Buddhism Study Temple in America
> v. City of Garden Grove*, 460 F.Supp.2d 1165, 1174-75 (C.D. Cal. 2006)

120.    The Village will be unable to demonstrate that preventing the use of the subject

Property as a church by Resurrection Power Assembly will be the narrowest alternative to

achieving any governmental interest, let alone a compelling interest.

121.     The Village permits its officials to make individualized subjective assessments of the proposed uses of property within the City, including the subject property.

122.     The Village's actions in refusing to follow its own Zoning Code (that allows religious institutions on the Property) facially and as applied in denying Resurrection Power Assembly's business license, and failing to respond to its request to approve the pending electrical and plumbing permits, therefore violates the substantial burden provision of RLUIPA.

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

<u>**COUNT VII-VIOLATION OF RLUIPA 42 U.S.C. 2000cc(2)(b)(1)**</u>
<u>**EQUAL TERMS PROVISION**</u>
<u>**(The Church Against the Village and Mayor Henyard for Damages)**</u>

123.     The allegations contained in all of the preceding paragraphs are incorporated here by reference.

124.     Count VII is alleged against the Village of Dolton and Mayor Henyard.

125.     The Discrimination and Exclusion Provision of RLUIPA, 42 U.S.C. 2000cc(2)(b)(1) provides the following:

>        "(b) Discrimination and exclusion: Protection of land use as religious exercise.
>        (1) Equal terms:  No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." (42 U.S.C. 2000cc(2)(b)(1)

126.     As the Seventh Circuit has explained: "The equal-terms section is violated whenever religious land uses are treated worse than comparable nonreligious ones." *Digrugilliers v. Consolidated City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007).

127.     The Seventh Circuit interpreted the equal terms provision of RLUIPA As providing that religious and secular land uses may not be treated differently from the standpoint of an accepted zoning criterion. The court stated that "should a municipality create what purports

25

to be a pure commercial district and then allow other uses, a church would have **an easy victory** if the municipality kept it out." *River of Life Kingdom Ministries v. Vill. Of Hazel Crest*, 611 F.3d 367, 374 (7th Cir. 2010) (en banc, *emphasis* added).

128. "If a church and a community center, though different in many respects, do not differ with respect to any accepted zoning criterion, then an ordinance that allows one and forbids the other denies equality and violates the equal-terms provision." *Id*. at 371.

129. The Village's actions and communications to Resurrection Power Assembly in refusing to allow the Church's request for a renewal building permit (and business license and plumbing and electrical permits) without any compelling reason when its own Zoning Code allows for religious institutions in the area and also freely permits non-religious, non-commercial assembly uses, such as hotels, municipal buildings, and a library in the same B-2 Limited Retail Business District is a violation of 42 U.S.C. 2000cc(2)(b)(1).

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

## COUNT VIII-EQUAL PROTECTION CLAUSE
## OF THE FOURTEENTH AMENDMENT
## (The Church Against the Village and Mayor Henyard for Damages)

130. The allegations contained in all of the preceding paragraphs are incorporated here by reference.

131. Count VIII is alleged against the Village of Dolton and Mayor Henyard.

132. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that the government treat similarly situated assembly uses equally.

133. There is neither a compelling governmental interest nor even a rational basis for the Village to deliberately ignore its own Zoning Code that expressly permits religious institutions in the B-2 Limited Retail Business District, in order to and prohibit Plaintiff from

26

obtaining the required business license and the requested permits on the basis that religious assembly uses are not allowed in the area where the Property is located.

134.    The Village's refusal to recognize and apply its own Zoning Code that allows for religious institutions in the B-2 Limited Retail Business District and to deny Resurrection Power Assembly its business license and requested electrical and plumbing permits on the Property on the false premise that churches are not allowed in that zone violates various fundamental rights of the Plaintiff, including the free exercise of religion.

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### COUNT IX-FREE EXERCISE CLAUSE
### (The Church Against the Village and Mayor Henyard for Damages)

135.    The allegations contained in all of the preceding paragraphs are incorporated here by reference.

136.    Count IX is alleged against the Village of Dolton and Mayor Henyard.

137.    The Defendant Village acted under color of law in such a manner that violated Resurrection Power Assembly and its congregation's clearly established rights to free exercise of religion.

138.    Upon information and belief, the Village violated Plaintiff's clearly established rights by acting outside of the scope of its governmental duties and/or misusing its governmental authority to actively oppose Resurrection Power Assembly's efforts to renew its building permit, plumbing permit, and electrical permit for the Property and conspired with Henyard and/or the Village's officials to deprive Plaintiff of its First Amendment (as applicable through the Fourteenth Amendment) Free Exercise rights.

139.    Upon information and belief, the Village expressly discouraged employees

27

working at the Village of Dolton from renewing Plaintiff's building permit, and from issuing electrical permit, and plumbing permits to Resurrection Power Assembly.

140.    The Village's actions demonstrate that it actively opposed the Church's efforts to obtain a renewal of its special use building permit to use the Church Property as a religious assembly.

141.    Village officials are municipal officers who, acting under color of law, caused the deprivation of the Church's clearly established federal rights or conspired to cause such deprivation.

142.    The Village conspired with Henyard, and other Village officials, to violate the civil rights of the Church under RLUIPA and the United States Constitution by treating the church in a discriminatory fashion and by creating undue burdens, delay, expenses, interference and/or uncertainty in the Church's efforts to use the Property for religious assembly and exercise.

143.    The Village did not have a strong and overriding reason to forbid where Resurrection Power Assembly could worship.

144.    As such, the Village infringed on the Church's hybrid rights of free exercise, freedom of assembly, freedom of association, and freedom of speech that are guaranteed by the First Amendment to the Constitution as incorporated and applied to the states through the Fourteenth Amendment.

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

## COUNT X-TIFFANY HENYARD, individually
## WILLFUL AND WANTON CONDUCT

145.    The allegations contained in all of the preceding paragraphs are incorporated hereby reference.

146.     Count X is alleged against Defendant Mayor Henyard individually.

147.     A public employee is not liable for negligence "in the execution or enforcement of any law," but he or she liable if his or her "act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. "Willful and wanton conduct" is defined by the Tort Immunity Act as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

148.     It is well-established that in order to recover damages for willful and wanton conduct, a plaintiff must allege duty, breach and causation, as well as "a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Jones v. Urban-Strong, LLC*, et al., 23-cv-03445 (N. Dist., 2024), citing *Kirwan v. Lincolnshire–Riverwoods Fire Prot. Dist*., 811 N.E.2d 1259, 1263 (2004).

149.     In this case, Henyard had a duty to follow and enforce the existing Zoning Code as Mayor of the Village of Dolton.

150.     Henyard breached her duty by instructing the Village and other public officials from the Village to communicate to the Church that the Property was in a zone intended only for commercial purposes, in contradiction to the Village's existing Zoning Code, and also instructing the Village to disregard the Church's multiple requests to the Village for a status on and the renewal of their pending General Public Permit, the business license, and the status of the approval of the plumbing and electrical permits for the Property.

151.     As a result of Defendant Henyard's intentional disregard or utter indifference to the Church's multiple requests to obtain the permits and business license so that it could continue with the church renovation and ultimately re-open the Property for church purposes, the Church

suffered, and is continuing to suffer harm, from the willful and deliberate actions by Defendant Henyard.

**WHEREFORE,** the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, the church, respectfully requests relief as follows:

A) Enter a judgment declaring that the Village of Dolton must renew Resurrection Power Assembly's building Permit, issue the requested plumbing and electrical permits, and business license;

B) Enjoin on a permananent or preliminary basis Defendants the Village of Dolton, its Mayor, officers, agents, employees, attorneys and all other persons acting in active concert with it, from acting in a manner inconsistent with the Village of Dolton's Zoning Code which permits churches in the area located at 703 E. Sibley Blvd., Dolton, Illinois;

C) Enjoin on a permananent or preliminary basis Defendants the Village of Dolton, its Mayor, officers, agents, employees, attorneys and all other persons acting in active concert with it, from preventing or attempting to prevent the Church from using the Property as a church;

D) Enjoin Defendants the Village of Dolton, its Mayor, officers, agents, employees, attorneys and all other persons acting in active concert with it, from preventing or attempting to prevent the Church from obtaining a business license, plumbing permit, and electrical permit and from renewing its General Building Permit;

E) Award damages against both Defendants for violation of the Church's constitutional and statutory rights, for the injuries and the unlawful burdens the Church has

incurred, and for the unlawful delay and expenses related to the Church's attempts to receive its permits;

F) Award the Church punitive damages for Mayor Henyard's willful and wanton acts of unreasonably and deliberately denying the Church's application for a renewal of its building permit on the Property, along with issuance of the requested electrical and plumbing permits;

G) Award the Church its costs and expenses of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and other applicable law; and

H) Grant such other relief as this Court deems appropriate.

Respectfully submitted this 5th day of March, 2024.

REDEEMED CHRISTIAN CHURCH OF GOD
RESURRECTION POWER ASSEMBLY

By: */s/ John W. Mauck*
John W. Mauck (jmauck@mauckbaker.com)
IL Bar NO. 1797328
**MAUCK & BAKER, LLC**
One North LaSalle Street, Suite 3150
Chicago, Illinois 60602
Telephone: (312) 726-1243

By: */s/ Judith A. Kott*
Judith A. Kott (jkott@mauckbaker.com)
IL Bar NO. 6280395
**MAUCK & BAKER, LLC**
One North LaSalle Street, Suite 3150
Chicago, Illinois 60602
Telephone: (312) 726-1243